UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN HARDY,

                        Plaintiff,

        -v-                                                1:06-CV-687 (LEK/ RFT)

B.C. PLANTE, J.A. MARTIN, MENELAOS,
and CORT, Police Officers of the City of
Albany Police Department,

                        Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

        Plaintiff Steven Hardy ("Plaintiff" or "Hardy") commenced this section 1983 action against

Defendants asserting excessive force claims arising out of his arrest on January 23, 2006.  See Am.

Compl. (Dkt. No. 6).  Presently before the Court is Plaintiff's Motion for summary judgment (Dkt.

No. 51).  Also before the Court is Defendants' Cross-Motion for summary judgment (Dkt. No. 52).

For the reasons discussed below, Defendants' Motion is granted and Plaintiff's Motion is denied.

## I.      BACKGROUND

## A.      Procedural History and Plaintiff's Compliance with the Local Rules

        On March 30, 2008, Plaintiff filed a Motion for summary judgment.  Dkt. No. 51.  However,

that Motion failed to comply with the Local Rules, as it did not include a memorandum of law or a

Statement of Material Facts.  See N.D.N.Y. L.R. 7.1(a).  Defendants argue that Plaintiff's Motion

should be dismissed due to this procedural failure.  As Plaintiff is proceeding *pro se,* the Court must

read his submissions liberally; yet his *pro se* status does not wholly exempt him from compliance

with the Local Rules.  Because the Court denies Plaintiff's Motion for summary judgment on the

merits, the Court need not address whether Plaintiff's failure to comply with all of the requirements of Local Rule 7.1 would otherwise warrant dismissal of his Motion.

On April 11, 2008, Defendants filed a Cross-Motion for summary judgment and a Response in opposition to Plaintiff's Motion for summary judgment. Dkt. No. 52. Defendants filed a Statement of Material Facts with their Motion. Dkt. No. 52, Attach. 4. Plaintiff submitted a memorandum of law in his response to Defendants' Cross-Motion for summary judgment. Dkt. No. 59. Plaintiff also submitted a Statement of Material Facts in response. Dkt. No. 59, Attach. 1. Defendants argue that this document failed to comply with the Local Rules, because Plaintiff "did not specifically address each and every statement made by the defendants in their Statement Pursuant to Local Rule 7.1 with citations to the record specifically refuting the defendants' statements" and that this failure to follow procedure "requires the Court to deem the statements made by the defendants as admitted." Dkt. No. 60, Attach. 1, ¶ 29.

Local Rule 7.1(a)(3) provides that a party opposing a summary judgment motion

shall file a response to the [movant's] Statement of Material Facts . . . [that] shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs . . . Each denial shall set forth a specific citation to the record where the factual issue arises . . . The Court shall deem admitted any facts set forth in the Statement of Facts that the opposing party does not specifically controvert.

N.D.N.Y. L.R. 7.1(a)(3) (emphasis omitted). Plaintiff's Statement of Material Facts contains a recitation of facts in numbered paragraphs, but those paragraphs do not mirror those in Defendants' Rule 7.1 Statement. Dkt. No. 59, Attach. 1. Rather, Plaintiff's Rule 7.1 Statement contains a paragraph asserting that he denies all the statements in Defendants' Rule 7.1 Statement. Id. ¶ 29. Finally, some of the paragraphs in Plaintiff's Statement do not contain citations to the record. Thus,

2

Plaintiff has not strictly complied with the requirements of Local Rule 7.1(a)(3). Again, however, the Court recognizes that Plaintiff is proceedings *pro se* in this action. Plaintiff's compliance with the Local Rules, although not perfect, is sufficient to apprise Defendants of the nature of Plaintiff's arguments and factual allegations. Thus, the Court will not disregard Hardy's Statement of Material Facts due to his failure to strictly comply with the Local Rules. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules") (citations omitted).

However, the Court cannot consider Plaintiff's version of the facts to the extent that he denies resisting arrest, as his prior conviction for resisting arrest precludes him from arguing that he fully cooperated with Defendants during the altercation. See discussion *infra*. Thus, the following recitation of Facts is drawn from Defendants' Statement of Facts and Hardy's Statement except insofar as he denies resisting arrest.

**B.    Facts**

On the evening of January 23, 2006, Defendants B.C. Plante and J.A. Martin, both officers with the Albany Policy Department, were on patrol when they received a report of a stabbing at 634 Clinton Avenue, Albany, NY. Plante Aff. ¶ 2 (Dkt. No. 52, Attach. 6 at 2).[1] The suspect was described as a black male, who was possibly bleeding and was wearing a fur coat. Id. ¶ 2. Shortly thereafter, the officers saw a black male who they believed matched the suspect's description, wearing a fur coat, at the intersection of First Street and North Lake in Albany. Id. ¶ 3. Officer Martin broadcast a description of the person they viewed and indicated that they were going to

---

[1] The record contains affidavits by each Defendant. In several instances, an affidavit contains information that overlaps that found in the affidavits of one or more other Defendants. Where this is the case, the Court will only cite to one such affidavit.

approach the suspect. Martin Aff. ¶ 4 (Dkt. No. 52, Attach. 6 at 6).  Officer Plante exited his vehicle and approached the suspect, later known to him as Plaintiff.  Plante Aff. ¶ 5.

Officer Plante had his gun drawn and pointed at Plaintiff while ordering him to "get on the ground face down."  Hardy L.R. 7.1 Statement (Dkt. 59, Attach 1., ¶ 10).  Officer Plante approached Hardy, who physically pushed the officer.  Plante Aff. ¶ 6. Officer Martin tackled Hardy to the ground, where Hardy then struggled with the officers.  Id. ¶¶ 7-8.  The officers issued multiple commands to Hardy to remove his hands from underneath him.  Id. ¶ 9.  Hardy alleges that while on the ground, one of the Defendants "violently twisted [his] arm in a matter to cause great pain, which made him jerk involuntarily."  Hardy L.R. 7.1 Statement ¶ 11.  Hardy also alleges that this involuntary movement caused Defendants "to assault plaintiff by hitting and beating him about the body and head."  Id. ¶ 12.

During the struggle, Officer Plante punched Plaintiff once on the right side of his face/ head.  Plante Aff. ¶ 11.  As Hardy continued to struggle with Officers Plante and Martin, Officer Cort and Officer Menelaos arrived on the scene.  See id. ¶ 13.  Plaintiff continued to refuse the Officers' commands as they attempted to pry Plaintiff's arms free and ascertain whether he had a weapon in his possession.  See Menelaos Aff. ¶¶ 8-9 (Dkt. No. 52, Attach. 6 at 11).  Officer Menelaos applied a Taser three times to Plaintiff's thigh.  Id. ¶ 10; Hardy L.R. 7.1 Statement ¶ 20.  Plaintiff argues that one of the Taser shots was applied after he was handcuffed, while Defendants argue that all three shots with the Taser gun were applied before Plaintiff was handcuffed.  Hardy Dep. at 24 (Dkt. No. 59, Attach. 2 at 25); Menelaos Aff. ¶ 10.  Plaintiff admits to consuming cocaine during the morning of January 23, 2006.  Hardy Dep. at 12; Pl.'s Mem. of Law at 1 (Dkt. No. 59).  However, he alleges that he was no longer under the influence of any drugs during his altercation

4

with Defendants. Hardy L.R. 7.1 Statement ¶ 16.  While Plaintiff claims that the arresting officers did not find a knife handle on him following his arrest, Albany Police Department records indicate that a knife handle was recovered from Plaintiff.  Hardy L.R. 7.1 Statement ¶ 27; Albany Police Department Property Report (Dkt. No. 52, Attach. 6 at 52).

In 2006, Hardy was tried before the County Court of Albany County, in connection with events earlier in the day on January 23, 2006, as well as with his interaction with Defendant police officers on that day.  Hardy was acquitted of burglary in the first degree, attempted assault in the first degree, and assault in the second degree, and convicted of grand larceny in the third degree, criminal possession of stolen property in the third degree and resisting arrest.[2]  See NYS Sentencing and Commitment Form for Steven Hardy (Dkt. No 52, Attach. 5 at 74).

## II.      SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

---

[2] The events leading to all charges other than resisting arrest precede Hardy's interaction with Defendants, and are not relevant to the disposition of the instant Motions except insofar as Defendants were aware that Hardy was a suspect in a stabbing.

judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." <u>Brown</u>, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56(e)(2); <u>see</u> <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991); <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990).

## III.   DISCUSSION

### A.   Issue Preclusion

Defendants argue that Plaintiff's conviction for resisting arrest precludes Plaintiff as a matter of law from relitigating the amount of force that was used by Defendants during his arrest. To determine this issue, the Court must apply New York's rules of issue preclusion/ collateral estoppel, as the prior judgment of conviction was rendered in New York. <u>See</u> <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 166 (2d Cir. 2000) (citations omitted). In New York, issue preclusion "applies 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" <u>Sullivan</u>, 225 F.3d at 166 (quoting <u>Parker v. Blauvelt Volunteer Fire Co.</u>, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 482, 712 N.E.2d 647 (1999)).

Defendants rely upon <u>Pastre v. Weber</u>, 717 F.Supp. 987 (S.D.N.Y. 1988) and <u>Caridi v.</u>

6

Forte, 967 F.Supp. 97 (S.D.N.Y. 1997) for the proposition that a conviction for resisting arrest has a preclusive effect upon a subsequent excessive force claim.  However, the Second Circuit in Sullivan addressed this specific issue and explicitly disapproved of both Pastre and Caridi.  The Second Circuit held that an excessive force claim would not be precluded by a conviction for resisting arrest "unless facts actually determined in [the plaintiff's] criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit."  Sullivan, 225 F.3d at 166.  The Second Circuit noted that

> The fact that a person whom a police officer attempts to arrest resists . . . no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. It is clear, therefore, that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest.

Sullivan, 225 F.3d at 165-66.

An analysis of whether issue preclusion would prevent a plaintiff from maintaining an excessive force claim after his conviction for resisting arrest "requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits."  Sullivan, 225 F.3d at 166.  Moreover, "[t]he burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion."  Id. (citation omitted).  Here, only limited portions of the record of Hardy's criminal trial are before the Court, including excerpts of the trial testimony of Plaintiff as well as Defendants Plante and Martin.  Notably absent are the pleadings and the jury instructions.  The limited record before the Court does not clearly establish whether the

7

amount of force used by Defendants was fully litigated and necessary to the judgment of conviction, or whether the determination at the trial of the amount of force used would necessarily be incompatible with Hardy's claims of excessive force. See Sullivan, 225 F.3d at 166. Thus, Defendants have not met their burden of proof, and Hardy is not precluded from asserting excessive force claims against Defendants.

However, Plaintiff's conviction for resisting arrest is certainly not irrelevant to his current suit. While that conviction does not preclude Plaintiff from claiming that Defendants nonetheless used excessive force, Plaintiff is precluded from arguing that he did not resist arrest during his altercation with Defendants. This situation is analogous to that presented in Diggs v. New York Police Dept., 2005 WL 3533158 (E.D.N.Y. Dec. 22, 2005). In Diggs, the plaintiff, who had earlier been convicted of, inter alia, attempted murder of a police officer in the first degree, brought a section 1983 action against his arresting officers, claiming excessive force arising from the altercation that led to the attempted murder charge. Id. at *1. The defendants argued that the plaintiff's conviction of attempted murder of a police officer collaterally estopped the plaintiff from claiming that excessive force was used against him. Id. at *2. The court found that the reasonableness of the officer's conduct was not an issue necessarily decided by the jury, and thus the plaintiff was not collaterally estopped from claiming that the officers used excessive force. Id. at *3. However, the court found that the plaintiff's conduct relevant to the charges against him had been litigated and decided against him in his criminal trial, and therefore, the plaintiff was precluded from arguing that he was unconscious or otherwise did not fire his gun with the intent to kill the police officer. Id. at *4.

In this case, Hardy was convicted of resisting arrest during his interaction with Defendants

on January 23, 2006.  Thus, he is precluded from arguing that he did not resist arrest.  While a court on a summary judgment motion must credit all rational factual inferences in favor of the party opposing summary judgment, Hardy's conviction for resisting arrest prevents him from asserting factual allegations or legal arguments that have been litigated and decided against him in his criminal trial.  Therefore, there is no triable issue of fact as to Hardy's conduct during the altercation with Defendants.  See Diggs, 2005 WL 3533158 at *4.

**B.    Excessive Force and Qualified Immunity**

Plaintiff argues that Defendants used excessive force during the events that led to his arrest on January 23, 2006.  Defendants argue that the force they used to subdue Plaintiff was not excessive.  Defendants also argue that they are shielded from liability by qualified immunity, as it was objectively reasonable for them to believe, in the exigency of the moment, that the force they used did not violate Plaintiff's rights.

The Fourth Amendment protects against the use of excessive force by the police during an arrest.  "When determining whether police officers have employed excessive force in the arrest context, . . . courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'"  Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  Whether police conduct is objectively reasonable under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Graham, 490 U.S. at 394 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Excessive force claims must be analyzed under the totality of the circumstances, "including the severity of the

crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he

is actively resisting arrest." Sullivan, 225 F.3d at 165 (citations omitted). "The 'reasonableness' of

a particular use of force must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The calculus of

reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the

amount of force that is necessary in a particular situation." Id. at 396-97.

Even if Defendants used excessive force in their arrest of Hardy, they would still escape

liability if their actions are shielded by qualified immunity. "[P]olice officers are entitled to

qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or

(2) it was objectively reasonable for them to believe their acts did not violate those rights." Oliveira

v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994). "The objective reasonableness test is met–and the

defendant is entitled to immunity–if officers of reasonable competence could disagree on the

legality of the defendant's actions." Thomas v. Roach, 165 F.3d 137, 143 (2d. Cir. 1999) (internal

citations and quotations omitted). In Lennon v. Miller, the Second Circuit noted that

> [A] defendant is entitled to summary judgment on qualified immunity grounds when "no
> reasonable jury, looking at the evidence in the light most favorable to, and drawing all
> inferences most favorable to, the plaintiffs, could conclude that it was objectively
> unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not
> clearly violate an established federally protected right.

66 F.3d at 420 (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

Although immunity should ordinarily be decided by the court, jury consideration is required

in those cases where there are material disputes of fact as to the availability of the defense. See

Oliveira, 23 F.3d at 649 (internal quotations and citations omitted). The Supreme Court has noted

10

that qualified immunity entitles public officials to "an *immunity from suit* rather than a mere defense to liability . . . [and thus] it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Thus, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, --- S. Ct. ----, 2009 WL 128768, *9 (U.S. 2009) (internal quotations omitted).

The Court concludes as a matter of law that Defendants did not use excessive force, in light of Plaintiff's actions resisting arrest and the circumstances known to Defendants at the time. In the alternative, the Court concludes that Defendants are entitled to qualified immunity. Hardy alleges violation of the well-established right to be free from excessive force. See Calamia v. City of New York, 879 F.2d 1025, 1036 (2d Cir. 1989) ("The right of an individual not to be subjected to excessive force has long been clearly established."). However, Defendants are entitled to qualified immunity, as it was objectively reasonable for Defendants to believe that their conduct did not violate Hardy's Fourth Amendment rights.

Hardy matched the description of a suspect in a stabbing. Therefore, it was certainly reasonable for Defendants to conclude that he could have been in possession of a knife, and the record shows that Defendants did recover a knife handle from Hardy following his arrest. Hardy also resisted arrested. As previously noted, Hardy's conviction for resisting arrest precludes him from arguing, as he attempts to do in his Motion, that he complied at all times with Defendants' commands. While the fact that Hardy resisted arrest "does not give [Defendants] license to use force without limit," Sullivan, 225 F.3d at 166, officers of reasonable competence could certainly conclude–given the severity of the crime for which Hardy was a suspect, Hardy's conduct and the Defendant's reasonable fear that Hardy possessed a knife–that the amount of force did not violate

11

Hardy's rights.  See Husbands ex rel. Forde v. City of New York, 2007 WL 2454106, *10

(S.D.N.Y. Aug. 16, 2007) (granting summary judgment to defendant police officer on excessive

force claim where officer punched resisting plaintiff, in order to free plaintiff's arms so as to

handcuff him); U.S. ex rel. Thompson v. Village of Spring Valley, N.Y., 2006 WL 1889912, *4

(S.D.N.Y. July 10, 2006) (finding that it was objectively reasonable for police officer to use Taser to

subdue suspect who was resisting arrest).

    Moreover, the parties are in substantial agreement on the amount of force employed by

Defendants in their efforts to handcuff Plaintiff–a punch and three shots from a Taser gun.  To the

extent that Hardy alleges force beyond that admitted by the Defendants–such as Hardy's allegation

that Defendants "assault[ed] plaintiff by hitting and beating him about the body and head" (Hardy

L.R. 7.1 Statement ¶ 12)–the medical documents in the record do not support these allegations.  See

Albany Medical Center Records from January 23, 2006 (Dkt. No. 52, Attach. 6 at 76-81); Franklin

Correctional Medical Records from 2007 (Dkt. No. 51, Attach. 1 at 7-11); Albany County Sheriff's

Department Photographs from January 23, 2006 (Dkt. No. 59, Attach. 2 at 15-16).  There is medical

evidence consistent with a punch to the head (as Defendant alleges and Officer Plante admits).  For

example, Plaintiff's emergency room admission report for the night of the incident states that

Plaintiff "had a small abrasion above his right eye . . . [that] can be clinically observed."  Dkt. No.

52, Attach. 6 at 77.  There is also evidence that Plaintiff has a deviated septum and related

complaints about breathing since "trauma in 2006" (although the record is unclear whether the

"trauma" was the interaction with Defendants).  Dkt. No. 51, Attach. 1 at 7.  However, there is no

evidence to support Plaintiff's claim of a more general "assault" to his entire person.  Rather, the

only indication in the record of Plaintiff's other medical ailments relate either to Plaintiff's cocaine

use or to incidents on January 23, 2006 that precede Plaintiff's encounter with the police.  See, e.g., Dkt. No. 52, Attach 6 at 79.

The Court concludes that, under the totality of the circumstances, Defendants' use of force was not excessive, and in the alternative, Defendants are entitled to qualified immunity for that use of force.

## IV.     CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 51) is **DENIED;** and it is further

**ORDERED**, that Defendants' Cross-Motion for summary judgment (Dkt. No. 52) is **GRANTED;** and it is further

**ORDERED**, that the case is **DISMISSED in its entirety with prejudice**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:        February 03, 2009
              Albany, New York

Lawrence E. Kahn
U.S. District Judge